UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MARCUS BARKER                                                    Plaintiff

v.                                          Civil Action No. 3:24-CV-00191-RGJ-CHJ

REVENUE SOLUTIONS, INC.                                         Defendant

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Revenue Solutions, Inc.'s ("RSI") Motion for Summary Judgment and Attorney's Fees [DE 19]. Plaintiff Marcus Barker ("Barker") responded [DE 25], and RSI replied. [DE 28]. This matter is ripe. For the reasons below, the Court **GRANTS** RSI's Motion for Summary Judgment and Fees. [DE 46].

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

RSI is a tax software solutions company. [DE 19 at 90]. The company provides solutions "focused on simplifying tax compliance, streamlining revenue collection, and driving digital transformation" for federal and state agencies. [*Id.*]. RSI employed Barker from February 10, 2020 to March 3, 2023. [DE 19 at 90; DE 21-1 at 241 Dep. M. Barker]. One of Barker's larger projects was known as the "Kentucky Project." [DE 19-1 at 111 Decl. of A. Brown; DE 25 at 336]. In August 2022, RSI hired a new manager, Jessica Kerr ("Kerr"), and Barker began to report directly to her. [DE 19-1 at 111 Decl. of A. Brown]. Kerr noticed that Barker failed to complete trainings and would show up late to meetings. [DE 19-1 at 111 Decl. of A. Brown; DE 19-2 at 130 Decl. of K. Jobgen]. Additionally, Barker started to receive negative feedback from clients. [DE 19-3 at 133 Decl. of R. DeMederios]. Based upon this feedback, RSI, with direction from Kerr, began to routinely meet with Barker to discuss his performance. [DE 19-1 at 111 Decl. of A. Brown]. Kerr and Barker continually had follow-up meetings regarding his performance, and it is disputed

whether Kerr called Barker "angry" at one of these meetings. [DE 19-1 at 111 Decl. of A. Brown; DE 21-1 at 257 Dep. M. Barker].

A few months later, RSI told Barker that he would be re-assigned from the Kentucky project. [DE 19-1 at 111 Decl. of A. Brown]. This decision had no impact on his title or compensation. [*Id.*]. Barker was then assigned on a short-term project, the New Jersey Project, which was non-client facing. [*Id.*]. During this time, Barker continued to receive training and support from RSI. [DE 19-2 at 130 Decl. of K. Jobgen; DE 19-3 at 133 Decl. of R. DeMederios]. However, due to continuing performance issues, on January 19, 2023, RSI formally put Barker on a performance improvement plan ("PIP") that would expire on February 19, 2023 if all conditions were satisfied. [DE 19-6 at 163-65 PIP].

After receiving the PIP, Barker filed a formal complaint of discrimination with RSI. [DE 19-1 at 111 Decl. of A. Brown]. On January 27, 2023, Barker met with Amy Brown, the Senior Human Resources Business Partner at RSI, to discuss his complaint. [*Id.*]. During this conversation, the only evidence Barker provided to Brown and human resources was that Kerr allegedly called Barker "angry" back in 2022 during a conversation regarding Barkers' performance on the Kentucky Project. [*Id.*]. Because Barker did not provide any further evidence, RSI determined that the claim was unsupported. [*Id.*].

At the conclusion of the PIP, RSI determined that Barker's performance was still not satisfactory, and terminated his employment. [DE 19-1 at 111 Decl. of A. Brown; DE 19-3 at 133 Decl. of R. DeMederios].

Following his termination and administrative remedies, Barker filed a lawsuit against RSI. [DE 1-1]. However, Barker only filed claims under the Kentucky Civil Rights Act as his 90-day period to sue for federal claims lapsed. [DE 19-7 at 166]. Thus, Barker now brings claims against

2

RSI for a violation of the Kentucky Civil Rights Act Chapter 344 ("KCRA") and retaliation. [DE 1-1 at 14-15].

Barker initiated this lawsuit on February 19, 2024, and a scheduling order was put into place shortly thereafter.  [DE 1-1; DE 11]. Since the entry of the scheduling order, there have been issues relating to service of discovery.

Initial disclosures were originally due on July 31, 2024. [*Id.*]. However, Barker did not serve initial disclosures until October 16, 2024. [DE 19-8].

Following initial disclosures, RSI served written discovery on November 6, 2024, through November 8, 2024. [DE 19 at 96]. This included requests for production, requests for admission, and interrogatories. [*Id.*]. RSI did not get a response from Barker, even as the deadline passed in December. After continuing silence, RSI requested a telephonic status conference with Magistrate Judge Colin H. Lindsay and stated that the parties would like to discuss the discovery issues at the scheduled February 20, 2025, hearing. [DE 13]. The parties jointly filed a status report recognizing the discovery deficiencies. [*Id.*].  At the hearing, Judge Lindsay extended the discovery deadline to April 18, 2025, but ordered Barker to respond to the outstanding discovery by March 7, 2025. [DE 15 at 64] ("Plaintiff shall serve his overdue responses to Defendant's discovery request.")

At Barker's deposition, he provided no explanation for why he had never responded to the discovery requests. [DE 21-1 at 269-270 Dep. M. Barker]. With no responses and Court deadlines approaching, RSI filed a Notice of Admissions to the Court deeming the requests for admission as admitted pursuant to Fed. R. Civ. P. 36. [DE 16]. Barker did not object or contest to any of the admissions provided to the Court. And as of this date, RSI still has not received any responses to their served discovery.

Separately, during Barker's deposition, he continually promised to provide evidence to RSI, including recordings, text messages, emails, and other related documents. [DE 21-1 at 282 Dep. M. Barker]. However, as of today, the documents and other "evidence" have never been provided to RSI.

Moreover, as RSI points out in their briefing, it does not appear that Barker served *any* discovery throughout this litigation. [DE 28 at 366 n. 5] ("Barker fails to inform the Court that he did not serve written discovery requests to RSI, ever request to take the deposition of any witness throughout this litigation, and that he continues to be in violation of Judge Lindsay's Order to submit responses to RSI's written discovery by March 7, 2025.").

In response to RSI's motion for summary judgment, Barker admits that "[d]iscovery in this matter admittedly has not operated smoothly." [DE 25 at 348]. Barker provides some reasons, at least initially, for the failure to respond. He states that the discovery was sent via hard mail, instead of email, as all other communication has been. [DE 25 at 348]. However, Barker does not explain why he did not comply with Judge Lindsay's order, nor, why he *still* has not responded to any discovery. Instead, Barker seemingly asserts that because RSI had the opportunity to depose him, that is sufficient, and he need not respond to the discovery requests. [DE 25 at 349 ("During the deposition counsel, [sic] had ample opportunity to question [ ] Barker about the nature of claims.")].

Based on the above, RSI moves for both summary judgment and attorneys' fees and costs. [DE 19 at 89]. RSI asks the Court to deem the failure to respond to the request for admissions as admissions, which would result in summary judgement for RSI as "Barker's admissions. . . confirm he cannot establish necessary elements of his race discrimination and retaliation claims." [DE 19 at 97-98]. Alternatively, RSI asks for summary judgement based on provided declarations

and other provided evidence, such as the deposition of Barker. [*Id.* at 104]. Plaintiff responds that the summary judgement standard is not met, and that RSI's offered non-discriminatory reasons are pretextual. [DE 25 at 340-347]. Barker does not to point to any evidence to support these claims. His response to the motion for summary judgment contains few cites to the record other than cites to his complaint in the factual history and references no evidence.

RSI also seeks an award of attorneys' fees pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927, as well as Rule 37(a)(5) and (b)(2)(c). Barker does not respond to these allegations.

## II.     STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing Fed. R. Civ. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). The nonmovant must does so by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

"Conclusory allegations in [a] complaint cannot serve to oppose a motion for summary judgment." *Whittley v. Wal-Mart Stores East, LP.*, No. 4:15CV-00019-HBB, 2015 WL 5554044, at *3 (W.D. Ky. Sept. 21, 2015) (citing *Kendall v. The Hoover Co.*, 751 F.2d 171, 173 (6th Cir. 1984)). Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials." Fed. R. Civ. P. 56(c)(1)(A). A complaint may "carr[y] the same weight as would an affidavit for the purposes of summary judgment," but only if the complaint is "signed . . . under penalty of perjury." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

Additionally, when possible, the Federal Rules of Civil Procedure support a preference to resolve a dispute on their merits. *Kanuscewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, n. 4 (6th Cir. 2019); *Phoenix Process Equip. Co.*, *v. Capital Equip. & Trading Co.*, 2022 WL 3365069, at *3 (W.D. Ky. Aug. 15, 2022); *Freeman v. Spoljaric*, 667 F.Supp. 3d 636, 661 (S.D. Ohio 2023) ("Where possible, 'it is preferable for courts to decide matters on the merits, rather than on procedural grounds.'") (quoting *Romero v. City of Middletown*, 2021 WL 308149, at *4 (S.D. Ohio Jan. 29, 2021).

## III.    DISCUSSION

Barker claims discriminatory termination and retaliation based on his race pursuant to violations of the KCRA. [DE 1-1 at 14-15]. RSI moves for summary judgment on both claims. RSI asks the Court to dismiss for "blatant and knowing violations" of discovery orders throughout this litigation. [DE 19 at 103]. Because the Sixth Circuit and Federal Rules of Civil Procedure express a preference for resolving a dispute on the merits where possible, prior to ruling on the discovery violations, the Court starts with analysis of the merits. *Kanuscewski,* 927 F.3d at n. 4; *Phoenix Process Equip. Co.*, 2022 WL 3365069, at *3. And, for the reasons stated below, the Court *can* resolve this dispute based on the evidence provided by the Parties.

### 1.  Discriminatory Termination

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993). In a claim for disparate treatment based on one's race or sex, "the plaintiff must establish that the adverse employment action was motivated, in part, by the plaintiff's protected-group status." *Lewis-Smith v. Western Ky. Univ.*, 85 F.Supp.3d 885, 897 (W.D. Ky. 2015). Without a discriminatory basis, an employer's discharge decision does not violate Title VII. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993) ("We have no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines, according to proper procedures, *that the employer has unlawfully discriminated*.") (emphasis in original).

A plaintiff must present either direct or indirect evidence of racial discrimination. *Paasewe v. Ohio Arts Council*, 74 F. App'x 505, 507 (6th Cir. 2003). When, as here, a plaintiff seeks to prove discrimination through indirect evidence [*see* DE 19 at 99], courts apply the three-step *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973); *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) (stating that KCRA claims receive the same analysis as Title VII claims).

At the first step of the *McDonnell Douglas* framework, the plaintiff must present evidence sufficient to establish a *prima facie* case of discrimination. *Id*. at 802. To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job and performed it satisfactorily; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014).

Once a plaintiff meets his *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 803. If the defendant articulates such a reason, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretext for unlawful discrimination—that is, "that the [employer's proffered] reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515. (emphasis in original).

Here, both parties agree that elements one (1) and three (3) are satisfied. Therefore, the Court will focus on elements two and four. [DE 19 at 99; DE 25 at 340]. Element two addresses whether Barker was qualified for his job and performed it satisfactorily. *Laster*, 746 F.3d at 727. Element four focuses on whether Baker was replaced by person outside the protect class or treated differently than a similarly situated non-protected employee. *Id*. To satisfy his initial burden, Barker must meet all four elements of the *McDonell Douglas* test. At this point in the burden shifting framework, the burden is on Barker to demonstrate these elements.

### i. Job qualification and adequate performance

As to the second element, Barker must prove that he was qualified for the job. The Sixth Circuit has established an "objective" standard. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003) (en banc). That is, the plaintiff's qualifications "are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* at 576.

Barker asserts, without citation, that he is well qualified for his job. He states that he was qualified because "RSI. . . hired [ ]Barker" in the first place. [DE 25 at 342]. In response, RSI asserts that, based upon the RFAs,[1] or in the alternative the provided declarations, that Barker

---

[1] As stated, because the Court can resolve the motion for summary judgment without deeming the RFAs admitted, it will do so.

"lacked the technically knowledge" for his position and "failed to adhere to the schedule for deliverables." [DE 16-1 at 73]. The declarations provided by RSI also document Barker's lack of technical knowledge. [DE 19-2 at 130 Decl. K. Jobgen].

Barker only provides "conclusory statements" that are insufficient to prove a *prima facie* case. *Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Barker does not point to the record or provide any contrary evidence to the declarations. And conclusory allegations in a complaint are also insufficient to oppose a motion for summary judgment. *Whittley*, 2015 WL 5554044, at *3. In juxtaposition, RSI uses declarations to demonstrate how Barker was *not* qualified. [DE 19-2 at 130 Decl. K. Jobgen]. As stated, at this stage in the litigation, the parties must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, *affidavits or declarations*, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Without any evidence from Barker, Barker fails to prove the second element of his *prima facie* case.[2]

## ii.  Similarly situated individuals.

Barker also fails to satisfy element four, whether Baker was replaced by person outside the protect class or treated differently than a similarly situated non-protected employee. *Laster*, 746 F.3d at 727. For the fourth element, Barker must "show that the 'comparables' are similarly-situated *in all respects*." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original) (citing *Stotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir. 1988)). In other words, Barker must show that "his proposed comparators were similar in all *relevant respects* . . . and that

---

[2] As further explained below, the Court notes that Barker had ample opportunities to both serve and respond to discovery in this matter yet chose not to do so, even after extensions from the Court. Therefore, it is Barkers' own fault for not providing any evidence to prove a *prima facie* case.

he and his proposed comparators engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (emphasis added) *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006)).  The Court looks to factors, including whether the "similarly-situated,' [ ] individuals . . . have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583 (citations removed).

Again, Barker does not provide any evidence he was treated differently than similarly situated non-protected employees. Barker only asserts, in a conclusory manner, that "[t]here were other technical trainers that were allowed to continue to perform their job" and that Barker was "the only technical trainer" removed. [DE 25 at 342].

These facts do not rise to the level of specificity as described above, and Barker does not offer, or point to, any evidence to support the barebones facts he does provide. RSI emphasizes this in their reply. [DE 28 at 362]. RSI states, Barker "fails to point to any evidence to show that he was qualified for the position he held or that similarly situated employees outside of the protected class were treated more favorably or replaced him." [*Id.*]. And that "Barker offers no specific allegations identifying any similarly situated employee, outside of the protected class, who was allegedly treated more favorably by RSI." [*Id.*]. Barker's conclusory statements are insufficient to survive at the summary judgment stage. *Chappell*, 803 F.2d at 268. Also, the Court has specifically held that producing no evidence regarding similarly situated non-protected employees results in a failed *prima facie* case. *Lusco v. DAE Indus.*, 2019 WL 4418019, at *5 (W.D. Ky. Sep. 16, 2019) (holding that because the plaintiff failed to demonstrate a *prima facie*

case of discrimination by failing to provide evidence regarding similarly situated individuals, their claim was dismissed on the summary judgement standard).

Moreover, Fed. R. Civ. P. 56 also requires the party cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations." Fed. R. Civ. P. 56(c)(1)(A). Barker fails to do so. And as stated, "[c]onclusory allegations in [a] complaint cannot serve to oppose a motion for summary judgment." *Whittley*, 2015 WL 5554044, at *3. Barker does not fall within the verified complaint exception, either. *El Bey*, 530 F.3d at 414. Thus, Barker fails to meet his burden to demonstrate a *prima facie* case. *Miller v. Aladdin Temp-Rite, LLC*, 72 F. App'x 378, 380 (6th Cir. 2003) (holding that plaintiff's race discrimination failed because plaintiff failed to present any evidence that they were treated differently than similarly situated employees outside of the protected class.).

### iii. Legitimate non-discriminatory reasons

If a *prima facie* case had been met, the burden would then shift to RSI to articulate a non-discriminatory reason for the termination. *McDonnell Douglas Corp.*, 411 U.S. at 803. Then, in turn, Barker could demonstrate that those reasons offered by RSI were pretextual. Pretext can be demonstrated if the offered reasons "'(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'" *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018) (quoting *Demyanovich v. Cadon Plating & Coatings*, L.L.C., 747 F.3d 419, 431 (6th Cir. 2014))

Through sworn declarations, RSI demonstrates that Barker had a history of poor performance. [DE 19-1 at 111 Decl. of A. Brown; DE 19-2 at 130 Decl. of K. Jobgen]. Poor performance is a permitted non-discriminatory reason for termination. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008). As a result, RSI has articulated a non-

discriminatory reason for the termination and the burden shifts to Barker to show that "poor performance" is merely pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 803.

Barker asserts that "RSI wants to persuade the court of a performance issue that was long standing, however, it fails to provide any supporting documentation," noting that "[t]he only documentation produced was a performance improvement plan and a few emails." [DE 25 at 343]. However, *it is Barker* who fails to provide any concrete evidence to the Court disputing the declarations or establishing that poor performance was pretextual. Barker does not put forth any evidence demonstrating that RSI's reasons "(1) have no basis in fact, (2) did not actually motivate the action, or (3) were insufficient to warrant the action." *Hostettler*, 895 F.3d at 858. And it is not the Court's responsibility to go searching in the record for evidence and facts. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam) ("Judges are not like pigs, hunting for truffles buried in briefs"); *see also Codrington v. Dolak*, 142 F.4th 884, 897 (6th Cir. 2025) (6th Cir. July 9, 2025) (noting its approval of this Seventh Circuit philosophy); *Dean-Lis v. McHugh*, 598 F. App'x 412, 415 (6th Cir. 2015) (also citing the Seventh Circuit quote with approval).

Because Barker's own personal beliefs are insufficient to satisfy pretext, even if a *prima facie* case of race discrimination is found, his race discrimination claim fails as a matter of law. *Rosenthal v. Faygo Beverages, Inc.*, 701 F. App'x 472, 480 (6th Cir. 2017).

   *2.   Retaliation*

Barker also brings a claim for retaliation against RSI. [DE 1-1 at 14-15]. Absent direct evidence, the process for bringing a claim for discriminatory retaliation mirrors that for bringing one for discriminatory termination and courts apply the *McDonnell Douglas* burden shifting framework. *Morris v. Oldham Cty. Fiscal Court,* 201 F.3d 784, 792 (6th Cir. 2000). However, the elements are different. To establish a *prima facie* case for retaliation, the plaintiff must demonstrate

they "(1) engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Hamilton v. Gen. Elec. Co.,* 556 F.3d 428, 435 (6th Cir. 2009) (internal citations omitted). Here, RSI admits that elements 1, 2, and 3 are met and only element 4 is in dispute. [DE 19 at 100]. Barker agrees. [DE 25 at 344-345]. RSI asserts that Barker "cannot show any causal connection between protected activity and the termination." [DE 19 at 100]. Barker asserts that "it appears unlikely that [ ]Barker would have [been] terminated if he did not engage in protected activity of complaining about workplace discrimination." [DE 25 at 346].

The last element requires the plaintiff to demonstrate "but-for" causation. *Beard v. AAA of Michigan*, 593 F. App'x 447, 551 (6th Cir. 2014). "But for" causation exists when the unlawful retaliation would not have occurred in the absence of the alleged action. *Id.* Within the Sixth Circuit, "temporal" proximity is insufficient to establish causation. *Kenney v. Aspen Tech., Inc.*, 965 F.3d 443, 448-49 (6th Cir. 2020).

On January 19, 2023, Barker was put on a performance improvement plan, also known as a "PIP". [DE 19-2 at 130 Decl. of K. Jobgen]. It was not until after Barker was placed on his PIP that he raised a complaint of discrimination. The Sixth Circuit has stated that "causation is lacking when an employer follows a pre-existing line of action regardless of the employee's protected action." *Tharp v. Apel Int'l, LLC,* 2022 WL 2981770, at *3-4 (6th Cir. Jul 28, 2022) (citing *Montell v. Diversified Clinical Servs., Inc.,* 757 F.3d 497, 507 (6th Cir. 2014)). Thus, RSI alleges that following a PIP to completion, specifically one initiated before the protected activity occurred, satisfies this burden. [DE 19 at 107]

14

Here, like his discrimination claim, Barker fails to establish a *prima facie* case of retaliation. Barker does not provide or point to any evidence in the record to demonstrate but for causation. Barker takes issue with the evidence RSI uses, such as the PIP and supporting declarations, alleging that RSI has used "self-serving declarations" and "60 pages out of a 300 page plus deposition of the plaintiff." [DE 25 at 344-45]. Yet, Barker does not provide his own affidavits, other evidence, or other pages of the deposition. In fact, Barker accuses RSI of creating a "revisionist history." [*Id.*]. But when presented with the opportunity to present his own evidence, to meet *his own* burden, Barker fails to do so. Therefore, Barker does not satisfy his burden of proving a prima facie case of retaliation as he does not satisfy the last element. *Tharp*, 2022 WL 2981770 at *3-4. Without providing, or pointing, to any evidence for the Court, Barker does not meet the summary judgement standard, and the claim fails as a matter of law. *Anderson*, 477 U.S. at 256.

In the alternative, even if Barker did meet his initial burden, RSI still provides a legitimate nonretaliatory reason to terminate Barker. *Ladd v. Grand Trunk W. R.R., Inc*., 552 F.3d 495, 503 (6th Cir. 2009). According to the provided declarations, Barker was fired based upon his poor performance after failing to meet his PIP's stated goals. [DE 19-1 at 111 Decl. of A. Brown; DE 19-2 at 130 Decl. of K. Jobgen]. And in a similar fashion to his *prima facie* case, Barker has not provided to the Court any affirmative evidence to demonstrate pre-text outside of his own subjective beliefs. Instead, Barker asserts his response in rhetorical questions such as, "if [ ]Barker had a history of poor work performance for long period of time, why did it take so long for RSI to take corrective action." [DE 25 at 347]. But again, it is not the role of the Court to "hunt for truffles." *Dunkel*, 927 F.2d at 956. The burden is on Barker to demonstrate with specific evidence, why his burden has been met, or alternatively, why RSI's proffered reasons are pretextual.

*Hamilton*, 556 F.3d at 435. Barker provides no such evidence. Therefore, even if a *prima facie* case is met, RSI provides a legitimate nonretaliatory reason for terminating Barker, that is uncontested outside of rhetorical questions.

Therefore, Barker's retaliation claim fails as a matter of law. *Hamilton*, 556 F.3d at 442 (Griffin, J. dissenting) (reiterating that the burden is on the Plaintiff to demonstrate evidence of pretext, otherwise a claim must be dismissed).

### 3. *Attorneys' Fees*

As noted above there have been several discovery issues requiring court intervention during this litigation The discovery issued include late notice of initial disclosures, allegedly violating the deadline by approximately eighty days and eventually serving initial disclosures on October 16, 2024, [DE 19-8] as well as Barker's failure to comply with Judge Lindsay's discovery order regarding responses to interrogatories, requests for production, and request for admission. Barker's lack of compliance with discovery requests, and violation of Judge Lindsay's order are troubling.

Pursuant to these alleged violations of discovery, RSI moves for attorney's fees against Barker. First, RSI seeks fees pursuant to 28 U.S.C. § 1927. [DE 19]. Second, RSI asserts that fees should be awarded pursuant to Rule 37, specifically Rue 37(b)(2)(C) and (a)(5).

In their initial motion, RSI states that "[t]his section of RSI's motion gives [ ]Barker full notice of potential sanctions and an opportunity to respond." [DE 19 at 103]. Barker **does not** respond to either argument for attorney's fees. And in turn, RSI asserts that Barker waived any

arguments in opposition. [DE 28 at 368]; *Buckner v. JP Morgan Chase Bank, N.A.* 2025 WL 1707302, at *4 (W.D. Ky. June 18, 2025).

i.    28 U.S.C. § 1927[3]

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. An award of sanctions under §1927 is highly discretionary. *Holmes v. City of Massillon,* 78 F.3d 1041, 1049 (6th Cir. 1996). Section 1927 sanctions serve the purpose of "deter[ing] dilatory litigation practices and [] punish[ing] aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). A finding of bad faith is not required to impose sanction under Section 1927 and the standard is objective. *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 532 (6th Cir. 2006). But, inadvertence or negligence do not meet the objective standard under § 1927. *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997). Counsel's conduct must "fall[] short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* "[T]he court must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Metz v. Unizan Bank,* 655 F.3d 485, 489 (6th Cir. 2011) (citation omitted). "An award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). "Punishment

---

[3] Although RSI contends fees are proper "pursuant to Rule 11 of the Federal Rules of Procedure, 28 U.S.C. § 1927" [DE 19 at 108] their argument is primarily pursuant to § 1927. Therefore, the Court will analyze their argument under § 1927.

under the statute is sparingly applied[.]" *Shields v. Nat'l Auto. Sprinkler Ind. Welfare Fund*, No. 3:08-CV-0285-H, 2009 WL 3231380 at *2 (W.D. Ky. Sept. 30, 2009); *Pierzynowski v. Police Dep't of City of Detroit*, 947 F. Supp. 1147, 1151 (E.D. Mich. 1996) (both citing *F.D.I.C. v. Calhoun,* 34 F.3d 1291, 1297 (5th Cir. 1994)).

RSI asks the Court to impose sanctions under 28 U.S.C. § 1927 based on Baker's failure to respond to discovery. RSI asserts that Barker testified during his deposition he possessed, and would produce, "evidence" in support of his race discrimination and retaliation claim. [DE 19 at 108; DE 21-1 at 288 Dep. M. Barker]. By not responding to "any information specifically requested by Defendant to date" RSI asserts that "how could litigation advanced [by Barker] not be unreasonable and vexatious." [DE 19 at 109].

RSI has repeatedly attempted to push this litigation forward, including through discovery. RSI has served discovery, taken a deposition, and when lacking a response, reached out to Barker and even Magistrate Judge Lindsay to facilitate further communication and case progress. [DE 19 at 95-96]. Without any responses, or any discovery served upon RSI, Judge Lindsay held a telephonic status conference. [DE 15]. Although responses were already late, which Barker contends was not his fault, Judge Lindsay allowed for an extension for all parties. [*Id.*]. In fact, Judge Lindsay gave Barker more time to serve discovery *and* serve his responses. [*Id.*]. He extended Barker's responses through March 7, 2025, and ordered all discovery to be completed by April 18, 2025. [*Id.*]. Yet, both of those dates went by, and Barker *still* never responded to any discovery, nor served his own. This forced RSI to file, on the docket, Notice of Admissions and a Notice of Deposition. [DE 16; DE 18]. Barker never objected, or acknowledged the notice of admissions, until his response to this motion for summary judgement. Although Barker does not respond to the sanctions argument, he responds in relation to the weight of the RFAs. He states

18

that because a deposition occurred, the admissions should not be given the full weight. [DE 25 at 351]. He asks that the Court "decide the case on the merits" which, the Court has. [*Id.*]. More troubling to the Court is that Barker does not acknowledge his lack of objections or offer a reason for not complying with Judge Lindsay's order. In fact, his reply brief does not seem to acknowledge Judge Lindsay's order at all.

In *Eitel v. PNC Bank, N.A.*, 2024 WL 4361962, at *6-8 (W.D. Ky. Sep. 30, 2024) the Court decided not to impose Section 1927 sanctions resulting from a discovery dispute. There, the Court found that because both parties were at fault in discovery, the conduct by both parties , did "not rise to the level of sanctionable misconduct." *Id.* at *7. Here, the circumstances present a closer call. Judge Lindsay strictly held in RSI's favor, even reminding Plaintiff that they have "an obligation to communicate and cooperate in discovery." [DE 15 at 63]. Then Judge Lindsay even extended the deadline for Barker to serve responses. [*Id.*]. Judge Lindsay stated that, "Counsel for Plaintiff asserted that he had been working with Plaintiff to prepare responses" however, as of the date of this Court's order, responses are still outstanding. [*Id.*].  Discovery appears to be completely one sided in this dispute, and Barker has not upheld his responsibilities, even after attesting to do so. As mentioned, Section 1927 does not need a finding of bad faith. *Salkil*, 458 F.3d at 532. And although negligence is insufficient, this conduct appears to be more than mere negligence. *Ridder*, 109 F.3d at 298.  Because of Barker's inaction, RSI has been forced to litigate this case to the end, incurring more expenses than likely would have resulted if Plaintiff cooperated and followed Court orders. Yet it is unclear if this conduct "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* And because this statute should be "sparingly applied" the Court finds that it does not need to make a

determination because the Court finds that sanctions *are* proper under Rule 37. *Shields,* 2009 WL 3231380, at *2.

      ii.    <u>Rule 37</u>

In the alternative, RSI seeks fees and costs pursuant to Rule 37. [DE 19 at 109]. Rule 37 states that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The sanctions may be monetary or may result in dismissal. *O'Dell v. Kelly Servs., Inc.*, 334 F.R.D. 486, 490 (E.D. Mich. 2020). Courts are instructed to use a four-factor test to determine if sanctions are appropriate.

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is whether less drastic sanctions were first imposed or considered.

*Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997).

RSI asserts that:

> [] Barker cannot possibly show his egregious disobedience to be substantially justified or contend an award would be unjust, where he made no efforts to comply with Judge Lindsay's Order by the March 7, 2025 deadline or even after the deadline, when reminder of that deadline at the April 18, 2025 deposition. Ignoring the Court's Order simply cannot be rewarded.

[DE 19 at 109]. The Court analyzes each factor in turn.

### a. Willfulness, bad faith, or fault

In *O'Dell*, the Eastern District of Michigan found that when a party fails to comply with Court orders, and disregarded discovery deadlines, "even after those dates were extended and even after the Court took the time to hold telephonic conferences" it is "difficult to characterize [the]

deficiencies as anything other than willful and in bad faith." *O'Dell*, 334 F.R.D. at 491. In *O'Dell*, the court found that non-compliance was unacceptable, even though the plaintiff was *pro se*. *Id.* Here, Barker follows a similar path as the plaintiff in *O'Dell*, yet with retained counsel. Barker continually missed deadlines and disregarded orders, even after agreeing to those deadlines during a status conference. [DE 15]. Barker does not refute, apologize, nor offer any explanation. Thus, this factor weighs in favor of sanctions.

### b.  Prejudice

"A defendant in a civil case cannot mount an effective defense if not provided with discovery." *O'Dell*, 334 F.R.D. at 491. Specifically, a party is prejudiced when "unable to secure the information requested" and "required to waste time, money, and effort in pursuit of cooperation." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). Here, RSI has continually asked, requested, and notably received a Court order for Barker to comply with discovery. Yet, to no avail. In return, RSI proffered their own declarations. It is unfair to fault RSI for any of these actions after the inaction by Barker. This factor also weighs in favor of sanctions.

### c.  Warning

In their motion for summary judgement, RSI noted their warning and gave Barker a chance to reply. [DE 19 at 103]. This warning is sufficient for monetary sanctions, but not necessarily dismissal. *Peltz v. Moretti*, 292 F. App'x 475, 480 (6th Cir. 2008). As stated, this analysis is for the purpose of monetary sanctions only, and thus the Court finds this warning sufficient.

### d.  Consideration of less drastic sanctions

The Court is reviewing Rule 37 for monetary sanctions, not the "sanction of last resort" of dismissal. *Bank One of Cleveland, N.A., v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). The Court finds that on a balance of all factors, monetary sanctions are appropriate. *O'Dell*, 334 F.R.D. at

492. Barker's actions resulted in wasteful hours by RSI, and the Court, to help move this litigation forward. And even in the face of extensions, and reminders of their obligation, Barker still *to this date* has not complied with Judge Lindsay's order. Nor did Barker respond to any of these allegations for sanctions in his reply brief to this motion, possibly even constituting waiver. *Buckner*, 2025 WL 1707302, at *4.

The Court finds, pursuant to Rule 37, that sanctions are appropriate, and Barker is ordered to "pay the reasonable expenses, including attorney's fees" to RSI pursuant to the instructions below.

## IV.    Conclusion

For the reasons stated above, and the Court being otherwise advised the Court **ORDERS:**

1. Defendant RSI' Motion for Summary Judgment and Attorney's Fees [DE 19] is **GRANTED**

2. Pursuant to Fed. R. Civ. P. 37(b)(2)(C), Plaintiff is ordered to pay to Defendant their reasonable costs and attorney fees expended in this motion, and all motions and corresponding work product related to the discovery deficiencies.

3. RSI must submit a supplement, such as an itemized billing statement with corresponding descriptions of work, and an affidavit, to support their award of attorneys' fees within 14 days of this order. The supplement must include why such fees and expenses, along with the hourly rates, are reasonable.

4. RSI must submit a bill of costs to the Court, which Plaintiff will have 14 days to respond.